**Slip Op. 99-69**

# UNITED STATES COURT OF INTERNATIONAL TRADE

## BEFORE: RICHARD W. GOLDBERG, JUDGE

| | |
|---|---|
| HEVEAFIL SDN. BHD., RUBBERFLEX SDN. BHD., RUBFIL SDN. BHD., AND FILATI LASTEX ELASTOFIBRE (MALAYSIA) <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES OF AMERICA, <br><br> Defendant. | Court No. 97-07-01152 |

[Court remands the final results in the third administrative review of the antidumping duty order of the U.S. Department of Commerce.]

Dated: July 23, 1999

White & Case LLP, (Walter J. Spak, David E. Bond, Richard G. King, and Edward Meyers) for plaintiffs Rubberflex Sdn. Bhd., Rubfil Sdn. Bhd., and Filati Lastex Elastofibre (Malaysia).

David W. Ogden, Acting Assistant Attorney General; David M. Cohen, Director, Commercial Litigation Branch, Civil Division, United States Department of Justice; Lucius B. Lau, Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice; Office of the Chief Counsel for Import Administration, United States Department of Commerce (Mildred E. Steward), of counsel, for defendant.

## OPINION

**GOLDBERG, Judge:** In this action, the Court reviews plaintiffs'[1] challenges to the Department of Commerce's ("Commerce") final determination for the third administrative review of an antidumping duty order covering extruded rubber thread from Malaysia.  Extruded Rubber Thread From Malaysia; Final Results of Antidumping Duty Administrative Review, 62 Fed. Reg. 33,588 (June 20, 1997) ("Final Results").  Plaintiff Rubberflex Sdn. Bhd. ("Rubberflex") argues that (1) the manner in which Commerce administered the antidumping duty order and conducted the third administrative review, particularly verification, prejudiced Rubberflex; (2) Commerce was able to verify most of Rubberflex's responses and therefore should not have used total "facts available" to assign Rubberflex a dumping margin; and (3) Commerce incorrectly presumed that Rubberflex did not cooperate to the best of its ability and therefore erred in applying "adverse inferences" to the "facts available."  The Court addresses these arguments in Section III(A).

Plaintiff Rubfil Sdn. Bhd. ("Rubfil") argues that Commerce

---

[1]     The parties stipulated to the dismissal of Heveafil Sdn. Bhd. from this action on November 7, 1997.

double-counted its general and administrative and indirect selling expenses in calculating constructed value. Plaintiff Filati Lastex Elastofibre (Malaysia) ("Filati") argues that Commerce double-counted marine insurance in calculating U.S. price. The Court addresses these arguments in Section III(B).

The Court exercises jurisdiction over this matter pursuant to 28 U.S.C. § 1581(c) (1994). The Court remands the <u>Final Results</u> to Commerce.

**I.**
**BACKGROUND**

On October 7, 1992, Commerce published an antidumping order covering extruded rubber thread from Malaysia. <u>See</u> <u>Antidumping Duty Order and Amendment of Final Determination of Sales at Less Than Fair Value: Extruded Rubber Thread from Malaysia</u>, 57 Fed. Reg. 46,150 (Oct. 7, 1992). On November 16, 1995, Commerce initiated the third administrative review of the order ("third review").[2] <u>See</u> <u>Initiation of Antidumping and Countervailing Duty Administrative Reviews</u>, 60 Fed. Reg. 57,573 (Nov. 16, 1995)

---

[2] The third review was initiated after December 31, 1994, and thus the applicable statutory provisions are those that existed on January 1, 1995, the effective date of the amendments made by the Uruguay Round Agreements Act, Pub. L. No. 103-465, 108 Stat. 4809 (1994). <u>See</u> <u>Torrington Co. v. United States</u>, 68 F.3d 1347, 1352 (Fed. Cir. 1995).

(Extruded Rubber Thread from Malaysia).  The review covered
entries made during the period October 1, 1994 through September
30, 1995.

Commerce issued the preliminary results of its review on
December 10, 1996, see Notice of Preliminary Results of
Antidumping Administrative Review: Extruded Rubber Thread From
Malaysia, 61 Fed. Reg. 65,019 (Dec. 10, 1996), and on June 20,
1997, Commerce issued its Final Results.  See 62 Fed. Reg.
33,588.  It assigned Rubberflex a dumping margin of 20.38%, using
adverse, total facts available.  See id. at 33,601.  It assigned
Rubfil a dumping margin of 54.31%.  See id.  Finally, it assigned
Filati a dumping margin of 8.11%.  See id.

## II.
## STANDARD OF REVIEW

The court will sustain Commerce's Final Results if they are
supported by substantial evidence and are otherwise in accordance
with law.  See 19 U.S.C. § 1516a(b)(1)(B) (1994).  Further, the
court "review[s] verification procedures employed by Commerce in
an investigation for abuse of discretion."  Micron Tech., Inc. v.
United States, __ Fed. Cir. (T) __, __,  117 F.3d 1386, 1396
(1997).

**III.**
**DISCUSSION**

**A.    Rubberflex**

Rubberflex moves for judgment upon the agency record
pursuant to USCIT R. 56.2(c).  It challenges Commerce's Final
Results for the third review on substantially the same grounds as
the second review.  See Rubberflex Sdn. Bhd. v. United States,
No. 97-12-02180, slip op. 99-68 (July 23, 1999) ("Rubberflex I").
Namely, it alleges that Commerce conducted the administrative
review in an extremely disorganized, irresponsible and
prejudicial manner, and that Commerce was able to verify most of
Rubberflex's responses and therefore should not have used total
facts available to assign a dumping margin.  Likewise, with
respect to verification, Rubberflex alleges that (1) Commerce
never checked whether its time frame for verification was
feasible for Rubberflex or its attorneys, and refused to
reschedule verification to a mutually convenient time; (2)
Commerce gave Rubberflex only two business days to prepare for
verification; (3) at verification, Commerce tacitly accepted
Rubberflex's proposal to submit all corrections at the conclusion
of verification and then refused to accept such submissions; (4)
Commerce case handlers conducted verification according to an

undisclosed methodology; (5) Commerce case handlers were not adequately prepared for verification, thereby causing delay; and that (6) despite such delays, Commerce case handlers refused to work past 5:00 p.m. or on weekends.

In addition to the complaints common to both reviews, Rubberflex lodges several specific to the third review. First, Rubberflex claims that Commerce was forced to extend the deadline for issuing its preliminary determination, as defined by statute, because Commerce repeatedly "put this proceeding on the back burner while attending to what it perceived to be more important matters." Br. of Pl. Rubberflex Sdn. Bhd. in Supp. of Mot. for J. Upon the Agency R. ("Pl.'s Br."), at 3 (internal quotation marks omitted).

Second, it notes that Commerce misplaced Rubberflex's business proprietary cost and sales data and requested additional copies. Rubberflex emphasizes that despite Commerce's mishandling of its business proprietary data, it cooperated fully and promptly submitted additional copies. Pl.'s Br., at 16.

Third, Rubberflex alleges that it requested a copy of Commerce's verification report on December 6, 1996 and several times thereafter, but that Commerce did not furnish it with a

copy until February 14, 1997.  Pl.'s Br., at 9.  Rubberflex

deduces from the delay that "Commerce did not complete the

Verification Report until *three months* after the preliminary

determination was issued," and thus that "Commerce quickly made a

determination, and then spent weeks attempting to construct a

rationale for that determination."  Pl.'s Br., at 19 (emphasis in

original).

Finally, Rubberflex argues that Commerce used adverse facts

available to assign Rubberflex a dumping margin, but did not make

an explicit finding, as required by statute, that Rubberflex

"failed to cooperate by not acting to the best of its ability."

Pl.'s Br., at 12-14.  Moreover, Rubberflex contends that it is

illogical for Commerce to claim that Rubberflex did not cooperate

in the third review, when it found that Rubberflex had cooperated

in the second review and verification for both reviews was

conducted simultaneously.  Pl.'s Br., at 17.

The Court was faced with a number of the same arguments in

Rubberflex I.  There, it held that Commerce's issuance of a

verification outline to Rubberflex two days prior to the start of

verification constituted an abuse of discretion.  See Rubberflex

I, No. 97-12-02180, slip op. 99-68, at 31.

In this case, the record clearly demonstrates that Commerce issued Rubberflex a verification outline on September 18, 1996, and began verification on September 23, two business days later. Accordingly, for substantially the same reasons articulated in Rubberflex I, the Court holds that Commerce's issuance of a verification outline to Rubberflex two days prior to the start of verification was an abuse of discretion. Therefore, the Court remands to Commerce to repeat verification.

The Court orders the parties to confer and file a scheduling order within ten days of the date of publication of this opinion. That scheduling order shall list the dates on which (1) Commerce will issue Rubberflex a verification outline, (2) Commerce will conduct verification, and (3) Commerce will file remand results with the Court. Remand results must be filed with the Court no later than ninety (90) days after the date of publication of this opinion. The Court emphasizes that it is allowing the parties more time than for the typical remand and does not anticipate any requests for extensions.[3]

_____

[3]     For a full discussion of the Court's expectations on remand, see Rubberflex I, No. 97-12-02180, slip op. 99-68, at 31-33.

## B.    Rubfil & Filati

Rubfil and Filati move for judgment upon the agency record pursuant to USCIT R. 56.2.  Both plaintiffs contend that Commerce's Final Results are neither supported by substantial evidence on the record nor are in accordance with law.

In Rubfil's case, Commerce used Rubfil's constructed value ("CV") as normal value.  Rubfil complains, however, that Commerce miscalculated CV.  It argues that, as indicated in its questionnaire response, it included general and administrative costs ("G&A") and indirect selling expenses in both the GNA and the INDIRSH fields.  Nonetheless, Rubfil contends, Commerce included both GNA and INDIRSH in Rubfil's CV, thereby double-counting Rubfil's G&A and indirect selling expenses.  For this reason, Rubfil asks the Court to remand the case.

Commerce agrees that it counted Rubfil's G&A and indirect selling expenses twice in its calculation of CV.  It asks the Court to remand the case to correct for the double-counting and to recalculate Rubfil's constructed value.  Accordingly, the Court remands the case with respect to Rubfil.

Filati, too, complains that Commerce erroneously double-counted data.  It claims that it listed international freight

charges for its U.S. sales on a sale-by-sale basis.  According to Filati, it clearly indicated that international freight charges included marine insurance.  Nonetheless, in calculating Filati's U.S. price, Commerce allocated 0.5% of the gross price to insurance on U.S. sales.  Because Commerce deducted this amount (0.5% of gross price) as well as the reported international freight charges from U.S. price, Filati claims Commerce double-counted marine insurance expenses.

Commerce concedes that it erroneously double-counted Filati's marine insurance and asks for a remand to correct the error.  Accordingly, the Court remands the case with respect to Filati, so that Commerce may eliminate the double-counting of marine insurance in its calculation of Filati's dumping margin.

## IV.
## <u>CONCLUSION</u>

For all of the foregoing reasons, the Court remands the

<u>Final Results</u> to Commerce.  A separate order will be entered

accordingly.

_____
Richard W. Goldberg
JUDGE

Date:      July 23, 1999
           New York, New York